UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RICARDO MAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV375 CDP |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC., et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Ricardo May filed his sixteen count complaint in this case against twelve defendants alleging civil conspiracy, identity theft, defamation, breach of notarial duty, negligence, tortious interference with credit expectancy, and negligent and willful noncompliance with the Fair Credit Reporting Act, 15 U.S.C. § 1681.  Currently before the Court is defendant Freedom Title LLC's motion to dismiss three counts of the complaint directed at it.  May opposes the dismissal, arguing that he has set forth a short and plain statement of his claims sufficient to put Freedom Title on notice.  I find that May has alleged sufficient facts for one of the claims but not for the two others, so I will grant Freedom Title's motion only

in part. I will also order May to address his failure to serve one named defendant and the default of two other defendants.

I. **Background**

Plaintiff Ricardo May alleges that he has been the victim of identity theft in that certain defendants wrongfully acquired May's social security number and then assumed May's identity to obtain title to real estate in his name. The general warranty deed transferring the real estate into his name was filed with the St. Louis City Recorder of Deeds office, thereby publishing it to members of the general public. Certain defendants, posing as May, then used the real property as collateral to enter into a loan transaction, resulting in a deed of trust which was also recorded and published to the public. May alleges that the notary public who notarized the documents containing his forged signature and who falsely attested that May was signing before him, defendant Tawana Jose, was an employee of Freedom Title. The real property acquired using May's name was subsequently cited for housing code violations in the City of St. Louis. In addition, May alleges that as a result of sporadic and late payments on the property's loan, false and derogatory information about him was reported to credit reporting agencies. This false information lead to May being denied credit from numerous sources.

Based on these factual allegations, May filed suit against twelve named defendants. Three counts are directed at defendant Freedom Title LLC, who seeks dismissal. These claims include: defamation, negligence, and tortious interference with credit expectancy.

## II. <u>Motion to Dismiss</u>

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6), Fed. R. Civ. P. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim entitling it to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Young v. City of St. Charles, Mo.</u>, 244 F.3d 623, 627 (8th Cir. 2001). When considering a motion pursuant to Rule 12(b)(6), the court must assume the factual allegations of a complaint are true and must construe those allegations in favor of the plaintiff. <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989).

Defendant Freedom Title LLC seeks dismissal of the three claims brought against it under Federal Rule 12(b)(6). Freedom Title argues that May has not alleged sufficient allegations under Missouri law to establish a claim for defamation, that May's complaint contains contradictory allegations and legal

conclusions as to Freedom Title's consent to official misconduct by an employee as required for a negligence claim under Missouri's notary public statutes, and that May fails to allege any intentional interference as required for the tortious interference claim.

### A. Count III: Defamation

May alleges that the general warranty deed and the deed of trust, which were filed with the St. Louis Recorder of Deeds, disseminated and published false information insinuating that May owned a property that he did not own. Because the property was in disrepair and because it became the subject of a criminal court case for housing code violations, the insinuation that May was the owner of the property was harmful to his reputation and caused him damage.

Under Missouri law, in order to establish a prima facie case for defamation, plaintiff must allege: (1) publication, (2) of a defamatory statement, (3) that identifies the claimant, (4) that is false, (5) that is published with the requisite degree of fault, and (6) damages the claimant's reputation. Gray v. AT&T Corp., 357 F.3d 763, 765 (8th Cir. 2004). Freedom Title argues that May has failed to properly plead three of the elements for defamation. However, because I find that the publication of the general warranty deed and deed of trust was insufficient to

satisfy May's obligation to plead facts constituting the publication of 'defamatory statements,' I need not reach Freedom Title's other arguments.

Freedom Title argues that May's claim fails because the statements in the general warranty deed and deed of trust are not defamatory. The language of these documents is the standard legal language used to convey title to a property and to execute a loan on a property. May contends that whether or not the forged property documents contain defamatory language is a question of fact not properly addressed in a motion to dismiss. This bare assertion is clearly contrary to Missouri case law, which states that whether language is defamatory and actionable is a question of law. Ribaudo v. Bauer, 982 S.W.2d 701, 704 (Mo. Ct. App. 1998) (citing Ampleman v. Scheweppe, 972 S.W.2d 329, 332 (Mo. Ct. App. 1998)). May argues that a plain reading of his complaint demonstrates that both of the forged documents published by Freedom Title were defamatory at the time of the publication. He asserts that the general warranty deed "credited plaintiff with being the owner of dilapidated and unkempt real estate" and the deed of trust "falsely accused Plaintiff of being indebted to Countrywide Home Loans."

Although the property documents did credit plaintiff with being the owner of a property and as being indebted to Countrywide Home Loans, the language of the documents was not defamatory. "A communication is defamatory if it tends so

to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Kennedy v. Jasper, 928 S.W.2d 395, 399-400 (Mo. Ct. App. 1996) (citing Restatement (Second) of Torts § 559). "To defame is to speak evil of one maliciously, to dishonor, to render infamous." Diener v. Star-Chronicle Pub. Co., 135 S.W. 6, 11 (Mo. 1911). Nothing in the language of the general warranty deed or the deed of trust would harm May's reputation or deter people from talking to him, nor is the language malicious or dishonoring.

Even assuming the factual allegations of the complaint are true and construing those allegations in May's favor, there is nothing in the general warranty deed or deed of trust that could be considered defamatory. Because May's complaint fails to state a claim of defamation as to Freedom Title, defendant's motion will be granted as to this claim.

### B. Count VI: Negligence

In the sixth count of May's complaint, he alleges that Freedom Title, through its employee defendant Tawana Jose, was negligent by consenting to Jose's official misconduct as a notary public and by failing to develop official procedures related to the notarization of documents by its employees. Under Missouri statute, an employer of a notary public can be liable for damages caused

by the notary's official misconduct if: (1) the notary public was acting within the scope of his employment at the time of misconduct, and (2) the employer consented to the notary's misconduct. Mo. Rev. Stat. § 486.360. "Official misconduct" is defined in the statute as "the wrongful exercise of a power or the wrongful performance of a duty." Mo. Rev. Stat. § 486.200(6). There is no dispute here that Jose was acting within the scope of her employment with Freedom Title when she notarized the forged signatures on the documents.

There is a dispute as to whether employer Freedom Title consented to Jose's misconduct. However, whether or not Freedom Title consented is not an issue to be decided on a motion to dismiss. May need only plead facts that, if assumed to be true, would establish his claim for negligence. In this case, May has plead in paragraph 91 of his complaint that Freedom Title was aware and consented to Jose's official misconduct as a notary public. This is sufficient to survive dismissal, therefore Freedom Title's motion will be denied as to this claim.

### C. Count X: Tortious Interference with Credit Expectancy

Finally, May alleges that Freedom Title and other defendants tortiously interfered with May's valid and reasonable expectancy that he would be able to apply for and obtain credit in the community, and as a result of defendants' actions, May has been repeatedly denied credit from multiple sources.

"This tort of is one sort of intentional interference with a business expectancy and is comprised of the following elements: (1) a valid credit expectancy; (2) defendant's knowledge of the expectancy; (3) a denial of credit induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Bell v. May Dept. Stores Co., 6 S.W.3d 871, 876 (Mo. 1999). Although May alleges that Freedom Title and other defendants' actions were "intentional, criminal and/or tortious," there are no factual allegations which support the assertion that Freedom Title intentionally interfered with May's credit expectancy.

May alleges only that Freedom Title's employee Jose notarized signatures that she knew or should have known were not May's and falsely attested that she witnessed May sign his name on the general warranty deed and on the deed of trust. These documents transferred property into May's name and granted a loan in May's name on the property. As a result of sporadic and late payments on the loan, defendant Countrywide Home Loans allegedly began reporting false and derogatory information about May to credit reporting agencies.

These allegations do not support an assertion that Freedom Title intentionally interfered with May's credit. "The person claiming tortious interference has the burden of proving that the other party actively and

affirmatively took steps to induce the breach and that the expectancy would have come to fruition but for the actor's improper conduct." Bell, 6 S.W.3d at 878 (quoting American Bank of Princeton v. Stiles, 731 S.W.2d 332, 344 (Mo. Ct. App. 1987)). A defendant had the requisite intent if he knew interference was certain or substantially certain to occur as a result of his actions, even if his express purpose was not to interfere. Id.

Although May does not have to prove his allegations at this stage of the proceeding, his allegations must be sufficient to state a claim. He has alleged no facts that would demonstrate that Freedom Title knew that the notarization of the property documents was certain or substantially certain to lead to the reporting of derogatory information to credit reporting agencies and thereby damage May's credit. Although the allegations support the contention that Freedom Title, through its employee Jose, actively and affirmatively took steps to cause the property to be put in May's name and to cause a loan to be taken out in May's name, there are no facts supporting an assertion that Freedom Title actively interfered with May's credit. Because I find that May has not alleged sufficient facts to support a claim of tortious interference with credit expectancy against Freedom Title, defendant's motion will be granted as to this claim.

**III. Service Issues**

On March 28, 2007, the Court ordered plaintiff Ricardo May to show cause as to why this action should not be dismissed without prejudice as to five defendants for lack of timely service. In response, May requested and was granted an extension of time to complete service upon the defendants. It has now been over sixty days since that extension of time was granted. Defendants Katina F. Mitchell and Tawana S. Jose have answered. Summons have been returned executed for defendants Tri-Star Title Company, LLC and DCR Investments, LLC, but neither of these defendants has answered by the date required (April 30, 2007 for Tri-Star and May 8, 2007 for DCR). Summons was returned unexecuted for defendant Deandrea Robinson.

After an additional 60 days for service, May still has not served all the defendants. The original state court complaint was filed in this case on November 3, 2006. May must show cause as to why he has been unable to complete service on defendant Deandrea Robinson. In addition, May should file default papers as to defendants Tri-Star Title Company, LLC and DCR Investments, LLC.

**IV.    Conclusion**

Because I find that May has sufficiently alleged facts which, if assumed to be true, constitute a claim for negligence under Missouri law, I will deny defendant Freedom Title's motion as to count VI. However, the facts alleged by

May do not support his claims of defamation and intentional interference with credit expectancy against Freedom Title.  As a result, counts III and X of May's complaint will be dismissed as to defendant Freedom Title.  In addition, May will be ordered to address his lack of service as to defendant Deandrea Robinson and the default of defendants Tri-Star Title Company, LLC and DCR Investments, LLC.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Freedom Title LLC's motion to dismiss [#54] is granted in part and denied in part.  Counts III and X of plaintiff's complaint will be dismissed as to defendant Freedom Title LLC.  All other counts remain pending.

**IT IS FURTHER ORDERED,** pursuant to Fed.R.Civ.P. 4(m), that plaintiff shall show cause in writing, within fourteen (14) days of the date of this order, why this action should not be dismissed without prejudice as to defendant **Deandrea Robinson** for lack of timely service.

**IT IS FINALLY ORDERED** that plaintiff shall, within fourteen (14) days of the date of this order, file appropriate motions for entry of default and for default judgment, supported by all necessary affidavits and documentation, as well

as proposed orders for the Court's consideration, as to defendants **Tri-Star Title Company, LLC** and **DCR Investments, LLC**.

Failure to comply with this order may result in dismissal without prejudice.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of June, 2007.